DELTA TRAFFIC SERVICE, INC., as-
signee of Adams Express,
Inc., Plaintiff,

v.

GEORGIA FREIGHT BUREAU,
INC., Defendant.

Civ. A. No. 1:87–cv–2758–MHS.

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 4, 1989.

Arthur B. Seymour, Atlanta, Ga., for plaintiff.

Elizabeth Ellen Anderson, Theodore M. Forbes, Jr., Atlanta, Ga., for defendant.

## ORDER

SHOOB, District Judge.

Plaintiff, as assignee for the common carrier Adams Express, Inc. ("Adams"), brought this action to recover undercharges for transportation services performed by Adams for defendant. Presently before the Court are cross-motions for summary judgment and defendant's motion for enforcement of the decision of the Interstate Commerce Commission ("ICC"). The ICC found, upon referral by the Court, that it would be unreasonable to require defendant to pay any alleged undercharges when Adams negotiated and provided services at rates lower than those actually on file with the ICC.

Plaintiff argues the Court is compelled by precedent to order payment of the undercharges and, therefore, cannot legally enforce the decision of the ICC. Precedent dictates, however, that the Court enforce the findings of the ICC and grant summary judgment in favor of the defendant.

## I. BACKGROUND

Defendant, a licensed property broker, contracted with Adams to transport five shipments for defendant's customers. Representatives for defendant and Adams agreed upon the rate defendant would pay for each shipment. Adams billed defendant at the agreed-upon rates and defendant paid the bills so calculated. Adams later went out of business.

Upon purchasing Adams' old freight bills, plaintiff discovered that Adams had charged defendant rates lower than the rates contained in Adams' tariffs on file with the ICC. Plaintiff sued for the undercharges in state court and the case was subsequently removed to this Court.[1] The Court later granted defendant's motion to refer the case to the ICC for determination on whether the collection of undercharges in this instance would constitute an unreasonable practice prohibited by the Interstate Commerce Act.

The ICC found the essential facts not in dispute and held that:

> [n]egotiated rates applicable to the involved shipments existed, and it would be an unreasonable practice to require [defendant] to pay undercharges for the difference between the amounts Adams Express, Inc. billed and [defendant] paid and the higher amounts contained in the tariffs on file.

I.C.C. Decision dated March 21, 1989 at 2. The Court agrees there are no genuine issues of material fact and adopts the decision of the Commission in its grant of summary judgment for defendant.

## II. DISCUSSION

### A. The ICC Position

■ Common carriers subject to the jurisdiction of the ICC are required to publish and file tariffs setting out their rates with the ICC. 49 U.S.C. § 10762(a)(1). The carrier is obligated to collect the rate as published in its tariff. 49 U.S.C. 10761(a). The "filed rate doctrine" holds that these tariffs are considered incorporated into any contract between the shipper and the carrier. The parties generally cannot modify the rate and the shipper is presumed to have knowledge of the tariff on file. *See Louisville & Nashville R.R. v. Maxwell,* 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915) ("Ignorance of misquotation is not an excuse for either paying or charging less or more than the rate filed").

Historically, courts and the ICC have applied the filed rate doctrine absolutely for fear that any change in policy might lead to intentional misquotations by carriers in an effort to discriminate in favor of particular shippers. The ICC, however, has recently amended its policy regarding the strict enforcement of tariff rates. In 1986, the Commission responded to the substantial deregulation of the Motor Common Carrier Act of 1980 and determined that the filed rate doctrine was no longer strictly applicable in situations where the carrier had negotiated a lower rate and had indicated that the lower rate would be the one charged. *See National Industrial Transportation League–Petition to Institute Negotiated Motor Common Carrier Rates,* 3 I.C.C.2d 99 (1986) (hereinafter *Negotiated Rates).* The policy announced in *Negotiated Rates* indicates that upon a court's referral, the Commission will determine, on a case by case basis, whether collection of undercharges would constitute an unreasonable practice under 49 U.S.C. § 10701(a)[2] and whether the negotiated rate is all the carrier should be allowed to collect.

---

**1.** The amount at issue in this case is minimal: $1,430.46. Disposition of this matter, however, may affect plaintiff's ability to recover a much larger amount of money. There are several related cases brought by plaintiff in this district involving the same legal and factual issues. *See Oneida Motor Freight, Inc. v. Fort Howard Corp.,* No. 87–cv–1769 (pending before this Court on defendants' motion to enforce the decision of the ICC); *Delta Traffic Service, Inc. v. George A. Hormel & Co.,* No. 87–cv–27 (proceedings stayed

by Judge Moye and presently before the ICC); *Delta Traffic Service v. Knight–Ridder Newsprint Co.,* 87–cv–2271 (pending before Judge Forrester on motion to enforce the decision of the ICC).

**2.** 49 U.S.C. § 10701(a) provides that "[a] rate ... classification, rule, or practice related to the transportation or service provided by a carrier subject to the jurisdiction of the Interstate Commerce Commission ... must be reasonable."

[A]n inflexible approach to this issue frustrates the intent of the national transportation policy to encourage pricing innovation, since it would chill rate negotiation between shippers and carriers and inhibit legitimate pricing initiatives. On the other hand, permitting equitable defenses in limited situations, we found, comports with the spirit of the Motor Common Carrier Act of 1980, Pub.L. 96–296, 94 Stat. [793] 739 (1980).

*Negotiated Rates* at 104. The Court finds that the ICC's new policy for examining undercharge issues is consistent with both their statutory authority and the approach presently employed in this circuit.

### B. Seaboard System Railroad, Inc. v. United States

The Eleventh Circuit in *Seaboard System Railroad, Inc. v. United States,* 794 F.2d 635 (1986), upheld the ICC's new policy and indicated that in undercharge suits, the filed rate doctrine codified at § 10761 must be harmonized with § 10701(a). *Id.* at 637. A close examination of *Seaboard* is necessary for resolution of the issue at hand.

*Seaboard* was in a different procedural position when decided by the Eleventh Circuit then we find ourselves today, yet the facts are very similar. In *Seaboard,* a shipper negotiated and paid a multi-car shipping rate rather than the single-car rate that was on file with the ICC. The plaintiff, successor in interest to the original carrier, noticed the discrepancy and sought to collect undercharges. Plaintiff sought a determination of undercharges not from a district court, but rather directly from the ICC. The Commission found that a collection of undercharges would be an unreasonable practice, and plaintiff petitioned the Eleventh Circuit for review of the ICC order.

■ Both the ICC and the Eleventh Circuit in *Seaboard* noted that the ICC's inquiry into whether it would be an unreasonable practice to collect undercharges represented a departure from the usual practice of rote application of the filed rate

doctrine. "Although the decision marks a change from past practice, we hold it is not contrary to the statute and within the Commission's authority." *Id.* at 637. In fact, the Court noted that "finding a carrier practice unreasonable is the kind of determination that lies in the primary jurisdiction of the Commission.... Nothing prohibits the ICC from changing its policy on enforcing the 'unreasonable practice' provision of section 10701(a)." *Id.* at 638.

Plaintiff argues that the Commission's holding in *Seaboard* was based upon an ambiguity in the published rate that is not present in this case. The ICC found that publication of a tariff whose meaning is not plain to the ordinary user is an unreasonable practice. The published tariff in *Seaboard* did not clearly indicate whether it was a single-car or multi-car rate. The holding was based not only upon the ambiguity, however, but also on the shipper's detrimental reliance on the misquotation.

The Commission in this case merely refused to allow the carrier to collect its undercharge when there was no evidence that the carrier intentionally or knowingly undercharged, when waiving the undercharges was unlikely to encourage carriers to indulge in intentional discriminatory rate "misquotations," and when the shipper relied upon the carrier's continuing conduct in misleading the shipper as to the applicable rate under a confusing tariff. The Commission did not abolish the requirement of 49 U.S.C.A. § 10761(a).

*Id.* The distinction that plaintiff argues is present, yet has little effect on the Court's reliance upon *Seaboard.* Whether or not the published tariff was clear to the ordinary user does not strictly govern a finding of an unreasonable practice. Reliance by the shipper on the continuing conduct of the carrier is equally important in such a finding.

■ Plaintiff also argues that the Eleventh Circuit was incorrect in upholding an ICC order which was contrary to precedent. *Seaboard* sets forth the Eleventh Circuit's

position[3] that the ICC's change in policy in undercharge cases is not a departure from the absolute application of the filed rate doctrine, but is within the agency's jurisdiction for determining what constitutes an unreasonable practice under the Interstate Commerce Act. In fact, the filed rate doctrine remains intact in § 10762; the Commission has simply chosen to address undercharge issues not solely by reference to that section, but also under its reasonable practices jurisdiction. *See American Trucking Ass'ns, Inc. v. Atchison, Topeka, and Santa Fe Railway Co.*, 387 U.S. 397, 416, 87 S.Ct. 1608, 1618, 18 L.Ed.2d 847 (1967) ("faced with new developments or in light of the reconsideration of the relevant facts and its mandate, [ICC] may alter its past interpretation and overturn past administrative rulings and practice").

*Seaboard* indicates the Eleventh Circuit's predisposition to uphold a finding by the ICC of an unreasonable practice where the continuing conduct of the carrier caused detrimental reliance on the part of the shipper. Therefore, the Court does not hesitate to adopt the ICC's finding that collection of undercharges in this instance would be unreasonable, as defendant relied upon Adams' representations and acceptance of a rate less than that on file.

*C. ICC "Advisory Opinions"*

 Upon referral by the Court, the ICC did not issue an order directing the parties as to the proper course of action, but rather made findings concerning the reasonableness of Adams' practices. Pursuant to 28 U.S.C. § 1336, a district may review any "order" it referred to the ICC.

When a district court or the United States Claims Court refers a question to the Interstate Commerce Commission for determination, the court which referred the question or issue shall have exclusive jurisdiction of a civil action to enforce, enjoin, set aside, annul, or suspend, in whole or in part, any order of the Interstate Commerce Commission arising out of such referral.

28 U.S.C. § 1336(b). The ICC does not expressly characterize its decision in this case as an order, but the Commission has recently expressed its intent that these decisions, whether characterized as advisory or not, are final and binding statements of the agency's position. While neither party questioned the characterization of the ICC decision, the Court finds that the ICC decision is an order which the Court may properly enforce pursuant to § 1336.

On June 29, 1989, the ICC issued a declaratory order interpreting the earlier *Negotiated Rates* decision. *See Petition to Institute Rulemaking On Negotiated Motor Common Carrier Rates*, 5 I.C.C.2d 623. The ICC has now clarified:

that we have primary jurisdiction over unreasonable practices issues; that our unreasonable practice determinations are thus binding and dispositive of the issue of the maximum legal compensation that a carrier may receive for the transportation involved; and that our determinations are subject to judicial review only to determine that they are not arbitrary or capricious.

*Id.* at 624. The Commission noted that the characterization of its past decisions as advisory in nature was an attempt to illustrate that unreasonable practice determinations were not self-enforcing, as only the court has the power to order the payment or denial of undercharges. *Id.* The Court agrees with the ICC recharacterization of its decisions and relies on 28 U.S.C. § 1336 as authority for enforcing the findings of the ICC.[4] Even if the decision of the ICC

---

**3.** A majority of lower federal courts have agreed with the 11th Circuit's reasoning. *See e.g., Maislin Ind. v. Primary Steel*, 705 F.Supp. 1401 (W.D. Mo.1988); *In re Tucker Freight Lines, Inc.*, 85 B.R. 426, 427–30 (W.D.Mich.1988); *Motor Carrier Audit & Collection Co. v. Family Dollar Stores*, 670 F.Supp. 644 (W.D.N.C.1987); *Younger Transportation v. TMBR Drilling, Inc.*, No. MO–85–CA–20 (W.D.Tex.1987). In addition, the

Eighth Circuit relied upon *Seaboard* in adopting the ICC's approach in that circuit. *See Maislin Ind. v. Primary Steel, Inc.*, 879 F.2d 400 (1989).

**4.** Also, the Court finds that the ICC correctly stated that the standard of review as arbitrary and capricious; an order of the ICC should not be set aside unless it exceeds the agency's statutory authority or is unsupported by substantial evidence. *See Consolo v. Federal Maritime Com-*

is not an "order" within the meaning of § 1336, the Court would reach the identical decision upon *de novo* review. The precedent of *Seaboard* dictates such a finding.

## III. CONCLUSION

The gravamen of plaintiff's motion in opposition to enforcement of the ICC decision and in support of its motion for summary judgment is that the Court cannot ignore precedent and create an exception to the filed rate doctrine. The ICC and the Eleventh Circuit in *Seaboard* have been careful to note that the new approach in negotiated rates cases does not constitute an exception to the filed rate doctrine, but rather is an application of the ICC's authority to determine what constitutes a reasonable practice under 49 U.S.C. § 10701(b). Carriers are still required to publish their tariffs with the Commission and shippers are presumed to know the applicable rate. In those cases, however, where the shipper relied on a negotiated rate that was continually charged and accepted by a carrier, the ICC may make the determination as to the reasonableness of such a *practice.* The Court does not hesitate to agree with the ICC that the assignee of Adams cannot review the previous course of conduct between the shipper and the carrier and attempt to collect undercharges.

Therefore, plaintiff's motion for summary judgment is DENIED. Defendant's motion for enforcement of the ICC decision is GRANTED and, accordingly, defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

*mission,* 383 U.S. 607, 619–21, 86 S.Ct. 1018, 1026–27, 16 L.Ed.2d 131 (1966). The Eleventh Circuit has already noted that decisions such as this one are properly within the statutory mandate of the ICC. *Seaboard,* 794 F.2d at 639. As to the sufficiency of the evidence, there is no contention that the evidence before the ICC was anything less than substantial. The enforcement of the ICC decision is, therefore, entirely appropriate in this instance.