**ADVANCE–UNITED EXPRESSWAYS, INC., Debtor–In–Possession**

v.

**C.R. BARD, INC.**

Civ. No. 1:89–CV–2149–ODE.

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 12, 1990.

John Howard Watson, Marietta, Ga., for plaintiff.

David Kiser Whatley, Fortson & White, Atlanta, Ga., and William J. Augello, Augello Pezold & Hirschmann, Huntington, N.Y., for defendant.

**ORDER**

ORINDA D. EVANS, District Judge.

This action for collection of freight charges under 49 U.S.C. § 10761 is before the court on Plaintiff's motion to strike Defendant's affirmative defenses and counterclaims.

This case arises from shipping transactions engaged in between Plaintiff and Defendant. Plaintiff and Defendant negotiated certain rates for which Plaintiff would ship Defendants' goods to various locations. On several occasions, Plaintiff shipped Defendant's goods according to their agreement—charging Defendant the agreed upon rate. Plaintiff is now bankrupt, however, and in an attempt to collect

**500**

all moneys due the bankrupt estate, Plaintiff brings this suit alleging that under the filed rate doctrine Defendant paid too little for the shipping services it received.

Plaintiff reasons that under the filed rate doctrine as espoused in 49 U.S.C. § 10761 [1] and as interpreted by the courts, interstate carriers are required to charge the shipping rate that they publish to the Interstate Commerce Commission ("ICC"). The filed rate doctrine prevents price discrimination by forbidding carriers from charging less than the published rate for any reason, and by forbidding shippers from paying less than the published rate, no matter what the excuse. Plaintiff alleges that its published rates were greater than the rates actually charged Defendant, and that Defendant is thus indebted to Plaintiff for the difference.

Defendant's answer to the complaint states several affirmative defenses and counterclaims. Plaintiff alleges that under the filed rate doctrine, such defenses and counterclaims are not permitted.

Defendant asserts that Plaintiff's attempts to strike all affirmative defenses reflect an outdated interpretation of the law. Defendant essentially asserts that since the Motor Carrier Act was amended in 1980, exceptions to the filed rate doctrine have been permitted, including equitable defenses. In support of this assertion, Defendant refers the court to a "savings clause" included in the Motor Carrier Act, which some courts have interpreted as permitting the assertion of equitable defenses to a filed rate case.

■ Courts have recently begun to examine the real question behind these "negotiated rate" cases. The real issue is whether the negotiation of a shipping rate between a carrier and a shipper can constitute an exception to the rule that a carrier must always charge the rate that it files with the ICC. There are two competing interests at work here. On the one hand, if the parties can negotiate a rate different from the filed rate and then conduct transactions based on that rate without regard to the rate filed with the ICC, there is no purpose in filing rates with the ICC—rendering the filed rate doctrine useless. On the other hand, the realities of our modern economy are such that the filed rate doctrine serves very little purpose anymore.[2]

Traditionally, the courts have responded to the filed rate doctrine with marked inflexibility—allowing no excuses for a carrier's failure to charge, or a shipper's failure to pay, the rate filed with the ICC. *Louisville & Nashville R.R. v. Maxwell*, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915) ("Deviation from [the filed rate doctrine] is not permitted upon any pretext ... ignorance or misquotation of rates is not an excuse for either paying or charging less or more than the rate filed."); *Illinois Cen-*

---

1. 49 U.S.C. § 10761(a) reads as follows:

   Except as provided in this subtitle, a carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under chapter 105 of this title [49 USCS §§ 10501 et seq.] shall provide that transportation or service only if the rate for the transportation or service is contained in a tariff that is in effect under this subchapter [49 USCS §§ 10761 et seq.]. That carrier may not charge or receive a different compensation for that transportation or service than the rate specified in the tariff whether by returning a part of that rate to a person, giving a person a privilege, allowing the use of a facility that affects the value of that transportation or service, or another device.

2. Traditionally, the filed rate doctrine was supposed to prevent carriers from giving secret discounts to some customers and thereby discriminating with regard to shipping price.

"[T]oday, shippers do not depend upon regulation to protect them from discriminatory pricing; in most circumstances, there are simply more competitive options." *NITL–Petition to Institute Rule on Negotiated Motor Carrier Rates (Ex Parte MC–177)*, 5 I.C.C.2d 623, 632 (June 14, 1989). "In fact, there has been nothing in the records of the [negotiated rate] cases [that the ICC] ha[s] reviewed to suggest that it was the intent of the parties to establish secret discriminatory rates. Rather, the carriers simply negotiated these rates to attract business, not with any intent to prefer one of their shippers to the disadvantage of others.... To permit the carrier subsequently to collect a substantially different higher rate for the past transportation service because it failed to publish the rate would be antithetical to a fundamental purpose of publishing rates—i.e., to permit shippers to choose the best rate for their shipments from among those offered by competing carriers." *Id.* at 631–32.

*tral Gulf Railroad Co. v. Golden Triangle Wholesale Gas Co.,* 586 F.2d 588, 592 (5th Cir.1978) ("Equitable considerations cannot justify a carrier's failure to collect authorized tariff charges ... nor can they be invoked as the basis for an estoppel to collect such charges.").

While courts have been slow to modify their approach to the filed rate doctrine, the ICC, in the wake of the 1980 changes to the Motor Carrier Act, changed its interpretation of the Act and decided to more rigorously enforce the § 10701 requirement that carrier rates be reasonable[3]. *See NITL–Petition to Institute Negotiated Motor Common Carrier Rates,* 3 I.C.C.2d 99 (1986).

Courts have responded to the ICC's change of position in three different ways. A minority of courts have stayed the course and adhered to the law of the filed rate doctrine as espoused before 1980. *See, e.g., Supreme Beef Processors, Inc. v. Yaquinto,* 864 F.2d 388 (5th Cir.1989), *reh. den.* 869 F.2d 1487 (5th Cir.1989), *appeal docketed* — U.S. ——, 110 S.Ct. 40, 107 L.Ed.2d 10 (1989); *Feldspar Trucking Co., Inc. v. Greater Atlantic Shippers Associates, Inc.,* 683 F.Supp. 1375 (N.D.Ga.1987), *appeal dismissed* 849 F.2d 1389 (11th Cir. 1988); *Rebel Motor Freight v. Southern Beverage Co.,* 673 F.Supp. 785 (M.D.La. 1987). A separate minority of courts have given effect to the "savings clause"[4] contained in the Motor Carrier Act to seemingly establish a Defendant's right to assert equitable defenses in negotiated rates cases. *See, e.g., Coliseum Cartage Co. v. Carlen Distribution System,* 732 F.Supp.

1340 (M.D. N.C. 1989); *Coliseum Cartage Co. v. Continental Coffee Products Co.,* 732 F.Supp. 1336 (M.D. N.C. 1989). The majority of courts, however, have taken a middle of the road approach, referring these cases to the ICC so that it can determine whether the asserted equitable defenses render collection of tariff undercharges an unreasonable practice under 49 U.S.C. § 10701. *See, e.g., Seaboard System Railroad, Inc. v. United States,* 794 F.2d 635 (11th Cir.1986); *West Coast Truck Lines v. Weyerhaeuser Co.,* 893 F.2d 1016 (9th Cir.1990); *Maislin Industries v. Primary Steel, Inc.,* 879 F.2d 400 (8th Cir. 1989); *Delta Traffic Service, Inc. v. Georgia Freight Bureau,* 722 F.Supp. 732 (N.D. Ga.1989); *Delta Traffic Service, Inc. v. Knight–Ridder Newspaper,* 691 F.Supp. 339 (N.D.Ga.1988); *Delta Traffic Service, Inc. v. Marine Lumber Co.,* 683 F.Supp. 754, 755 (D.Or.1987); *Motor Carrier Audit Collection Co. v. Family Dollar Stores, Inc.,* 670 F.Supp. 644 (W.D.N.C.1987); *Indiana Harbor Belt Railroad Co. v. Industrial Scrap Corp.,* 672 F.Supp. 1041 (N.D.Ill.1986).

As this court reads the Eleventh Circuit's ruling in *Seaboard System,* 794 F.2d 635, the courts in this Circuit follow the majority view[5]. *Seaboard System* was a negotiated rate case where the ICC ruled that the collection of tariff undercharges would be unreasonable under 49 U.S.C. § 10701. In *Seaboard,* the Plaintiff had assured the Defendant that the Defendant would only be charged the low multi-car rate for shipping. However, the only rate that the Plaintiff had filed with the ICC was the

---

**3.** 49 U.S.C. § 10701(a) states that "[a] rate (other than a rail rate), classification, rule, or practice related to transportation or service provided by a carrier subject to the jurisdiction of the Interstate Commerce Commission under chapter 105 of this title [49 USCS §§ 10501 et seq.] must be reasonable."

**4.** 49 U.S.C. § 10103 provides that "[e]xcept as otherwise provided in this subtitle, the remedies provided under this subtitle are in addition to remedies existing under another law or at common law."

**5.** Not all courts agree with this interpretation of *Seaboard System.* At least one District Court in this district has declined to refer a negotiated

rate case to the ICC, *Feldspar Trucking v. Greater Atlanta Shippers Association,* 683 F.Supp. 1375 (N.D.Ga.1987), *appeal dismissed* 849 F.2d 1389 (11th Cir.1988), and the Fifth Circuit has interpreted *Seaboard System* to mean that referral to the ICC for a ruling on whether the carrier's misquotation constituted an unreasonable practice is only appropriate when the tariff is unclear or ambiguous to the ordinary user. *Supreme Beef Processors v. Yaquinto,* 864 F.2d 388, 390–91 (5th Cir.1989), *reh. den.* 869 F.2d 1487 (5th Cir.1989), *appeal docketed,* —— U.S. ——, 110 S.Ct. 40, 107 L.Ed.2d 10 (1989).

higher single-car rate. According to the Eleventh Circuit, "[t]he Commission found that it could inquire into whether it would be an unreasonable *practice* for L & N to collect undercharges under the circumstances presented. Although this decision marks a change from past practice, we hold it is not contrary to the statute and within the Commission's authority." *Seaboard,* 794 F.2d at 637. Thus, this court agrees with the courts that have read *Seaboard* as holding that, in a filed rate case, the ICC may consider a Defendant's equitable defenses including negotiated rate defenses. *See, Delta Traffic Service v. Georgia Freight Bureau,* 722 F.Supp. 732 (N.D.Ga. 1989); *Delta Traffic Service v. Knight–Ridder Newspaper,* 691 F.Supp. 339 (N.D. Ga.1988); *Delta Traffic Services, Inc. v. Commercial Cold Storage, Inc.,* 1987 WL 60209 (N.D.Ga.). *But see, Supreme Beef Processors, Inc. v. Yaquinto,* 864 F.2d 388, 392–93 (5th Cir.1989) ("it is only when that tariff is unclear or ambiguous to the ordinary user that the Commission is willing to relax the filed tariff doctrine and consider the possibility that misquotation might be an unreasonable practice."), *reh. den.* 869 F.2d 1487 (5th Cir.1989), *appeal docketed,* —— U.S. ——, 110 S.Ct. 40, 107 L.Ed.2d 10 (1989); *Feldspar Trucking v. Greater Atlanta Shippers Association,* 683 F.Supp. 1375, 1377 (N.D.Ga.1987), *appeal dismissed* 849 F.2d 1389 (11th Cir.1988).

The question in this case, however, is whether on a motion to strike this court must refuse to recognize these defenses. A court must deny a motion to dismiss for failure to state a claim "unless it appears beyond doubt that the [Defendant] ... can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In this case, Defendant could prove a set of facts to the ICC which would entitle it to relief, but case law seems to prevent Defendant from proving these same facts to the court. *See Louisville & Nashville R.R. v. Maxwell,* 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915); *Illinois Central Gulf Railroad Co. v. Golden Triangle Wholesale Gas Co.,* 586 F.2d 588, 592 (5th Cir.1978).

The court resolves this dilemma by referring to the primary jurisdiction doctrine, which allows Defendant to assert its defenses through the ICC. "[T]he primary jurisdiction doctrine requires initial submission to the [Interstate Commerce] Commission of questions that raise 'issues of transportation policy which ought to be considered by the Commission in the interests of a uniform and expert administration of the regulatory scheme laid down by [the] Act.'" *ICC v. Atlantic Coast Line R. Co.,* 383 U.S. 576, 579, 86 S.Ct. 1000, 1004, 16 L.Ed.2d 109 (1966) (quoting *United States v. Western Pac. R.,* 352 U.S. 59, 65, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956)). "[F]inding a carrier practice unreasonable is the kind of determination that lies in the primary jurisdiction of the Commission", *Seaboard System Railroad, Inc. v. United States,* 794 F.2d 635, 638 (11th Cir.1986), *see also West Coast Truck Lines v. Weyerhaeuser Co.,* 893 F.2d 1016 (9th Cir.1990), and one way that the ICC can find a carrier practice unreasonable is to find that some equitable defense makes collection of the filed tariff unfair. *See Seaboard System,* 794 F.2d 635; *West Coast Truck Lines,* 893 F.2d 1016; *Delta Traffic Service v. Georgia Freight Bureau,* 722 F.Supp. 732, 734 (N.D.Ga.1989); *Delta Traffic Service v. Knight–Ridder Newspaper,* 691 F.Supp. 339, 340 (N.D.Ga.1988); *Delta Traffic Services, Inc. v. Commercial Cold Storage, Inc.,* 1987 WL 60209, 3 (N.D.Ga.); *but see Supreme Beef Processors, Inc. v. Yaquinto,* 864 F.2d 388, 392–93 (5th Cir.1989), *reh. den.* 869 F.2d 1487 (5th Cir.1989), *appeal docketed,* —— U.S. ——, 110 S.Ct. 40, 107 L.Ed.2d (1989); *Feldspar Trucking v. Greater Atlanta Shippers Association,* 683 F.Supp. 1375, 1377 (N.D.Ga.1987), *appeal dismissed* 849 F.2d 1389 (11th Cir. 1988).

The issue of whether Defendant's equitable defenses constitute an unreasonable practice under 49 U.S.C. § 10701 is thus a question best decided by the ICC. "28 U.S.C. § 1336(b) creates statutory authority for the referral by the district court of issues within the ICC's primary jurisdic-

tion." *West Coast Truck Lines*, 893 F.2d at 1021.

Accordingly, Plaintiff's motion to strike is DENIED. This case is hereby REFERRED to the ICC for determination of the issue of whether Plaintiff's collection of tariff undercharges would constitute an unreasonable practice under 49 U.S.C. § 10701. The parties are DIRECTED to confer and to immediately take all actions necessary to bring this question before the ICC. The Clerk of the Court is DIRECTED to administratively close this case pending an action by one of the parties under 28 U.S.C. § 1336 to enforce any order of the ICC.

SO ORDERED.