In the Matter of TSC EXPRESS
CO., Debtor.

L. Lou ALLEN, Trustee on behalf of
the Bankruptcy Estate of TSC
Express Co., Plaintiff,

v.

LIMITED DISTRIBUTION SERVICES,
INC., f/d/b/a Limited Distribution
Services, Defendant.

Bankruptcy No. A91–69474–ADK.
Adv. No. 93–6291.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Oct. 1, 1993.

John C. Pennington, Wilson, Strickland & Benson, Atlanta, GA, David G. Sperry, Independence, MO, for plaintiff.

Ivor J. Longo, Ivor J. Longo, Smith, Currie & Hancock, Atlanta, GA, Marion H. Little, Jr., Schwartz, Kelm, Warren & Rubenstein, for defendant.

## MEMORANDUM OF OPINION

A. DAVID KAHN, Chief Judge.

The Plaintiff–Trustee filed the above-styled adversary complaint for turnover of property and money judgment. This is a core proceeding over which the Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A). The Defendant has moved for an order staying proceedings in the case. The Defendant has also requested that the Court refer the issues of rate reasonableness and rate applicability to the Interstate Commerce Commission ("ICC") for determination. Plaintiff–Trustee did not respond to the Motion, and as a result, the Motion was deemed unopposed. LR 220–1(b)(1)(NDGa). The following facts are uncontroverted.

On May 14, 1991, an involuntary case under Chapter 7 of the Bankruptcy Code was filed against TSC Express Co. ("TSC") in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division. On July 18, 1991, an Order for Relief was entered. On July 25, 1991, the Plaintiff herein was appointed as Trustee in Bankruptcy ("Plaintiff–Trustee"). Prior to the bankruptcy petition, TSC operated a trucking company authorized to do interstate commerce business as provided for by the rules and regulations of the ICC.

On various dates, Defendant requested and received services from TSC in the form of transportation in intrastate, interstate or foreign commerce of products, goods or merchandise from and to points designated by or for, the account of Defendant. On May 12, 1993, Plaintiff–Trustee filed the instant Complaint for Turnover of Property and for Money Judgment. The claim arose from transportation services performed by TSC for Defendant. This claim is subject to the provisions of the Interstate Commerce Act. 49 U.S.C. § 10101, *et seq.*

Plaintiff–Trustee seeks to recover alleged undercharges owed by the Defendant for transportation services provided by TSC. The undercharges sought are the difference between its tariff rates filed with the ICC and lower rates, upon which TSC and the Defendant had originally agreed. 49 U.S.C. §§ 10761(a) & 10762. TSC billed, and Defendant paid, the price agreed upon by the parties at the time of shipping. These prices were below the rates contained in the tariff that the Interstate Commerce Act ("ICA") requires the carrier to publish and file. 49 U.S.C. § 10762. The tariff rate required by §§ 10761(a) & 10762 is frequently referred to as the "filed rate."

## PRIMARY JURISDICTION

Defendant asks that the Court stay its proceedings and refer the issue of rate reasonableness to the ICC. The Court, thus, must be concerned with the doctrine of primary jurisdiction. The Supreme Court has explained primary jurisdiction as

"appl[ying] where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issue which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case,

the judicial process is suspended ending referral of such issues to the administrative body for its views."

*United States v. Western Pac. R.R. Co.,* 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). There is no set formula by which a court is to make a determination of when to invoke the doctrine of primary jurisdiction. Rather, the court must make its decision to stay on an ad hoc basis.

■ The ICC was established with the enactment of the ICA. The ICC is the administrative agency charged with the special competence within the transportation industry and has a vast range of investigative, regulatory, adjudicatory and enforcement powers. 49 U.S.C. §§ 10301–10388. The ICA is a comprehensive scheme of federal law governing charges, practices, duties and liabilities of interstate transport carriers. *F.P. Corp. v. Kenway Trans., Inc.,* 821 F.Supp. 1032 (E.D.Pa. 1993).

### RATE REASONABLENESS

■ Defendant contends that Plaintiff–Trustee may not enforce its higher filed tariff rates because they are unreasonable. Defendant further contends the issue of whether filed tariff rates are unreasonable is one within the primary jurisdiction of the ICC.

The Supreme Court has acknowledged that "the filed rate is not enforceable if the ICC finds the rate to be unreasonable." *Maislin Industries, U.S. v. Primary Steel,* 497 U.S. 116, 128, 110 S.Ct. 2759, 2767, 111 L.Ed.2d 94. The Court also explained that primary jurisdiction to determine rate reasonableness in an interstate transportation case is fixed in the ICC. The Supreme Court has long recognized this rule. *See Thompson v. Texas Mexican Ry.,* 328 U.S. 134, 147, 66 S.Ct. 937, 945, 90 L.Ed. 1132 (1946) ("[I]n a long line of cases . . . it has been held that where the reasonableness or legality of the practices of the parties was subject to the administrative authority of the Interstate Commerce Commission, the court should stay its hand until the Commission has passed on the matter."). *See also, Arizona Grocery Co. v. Atchison, T.*

*& S.F.R. Co.,* 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 348 (1932); *Great Northern Ry. v. Merchants Elevator Co.,* 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943 (1922); *Atlantis Express, Inc. v. Standard Transp. Servs.,* 955 F.2d 529 (8th Cir.1992); *Pennsylvania R.R. v. United States,* 315 F.2d 460 (3d Cir.1963).

That being the case, the issue of rate reasonableness should appropriately be decided by the ICC. It is the Defendant's contention that since the issue of rate reasonableness is within the primary jurisdiction of the ICC, it must be referred to that commission. The question, thus, is when should the ICC decide the issue of rate reasonableness. The courts of appeals had, until recently, split on this issue, with a majority holding that a shipper may assert unreasonableness as a defense in an undercharge action brought by the carrier. See *Delta Traffic Serv. v. Transtop, Inc.,* 902 F.2d 101 (1st Cir.1990); *Duffy v. BMC Indus.,* 938 F.2d 353 (2d Cir.1991); *Advance United Expressway v. Eastman Kodak,* 965 F.2d 1347 (5th Cir.1992); *Western Transp. Co. v. Wilson & Co.,* 682 F.2d 1227, 1231–32 (7th Cir.1982); *Atlantis Express v. Standard Transp. Serv.,* 955 F.2d 529 (8th Cir.1992); *Milne Truck Lines v. Makita U.S.A.,* 970 F.2d 564 (9th Cir.1992). Only the Fourth Circuit, in *Cooper v. Delaware Valley Shippers, (In re Carolina Motor Express, Inc.),* 949 F.2d 107 (1991), had held the unreasonable rate defense as invalid. Rather, the Fourth Circuit had required that shipper to pay the tariff rate first and then seek relief in a separate action for damages. *Id.* at 110–11.

The Eleventh Circuit Court of Appeals has yet to make a determination on this issue. However, the Supreme Court recently reviewed *Carolina Motor* and reversed it. *Reiter v. Cooper,* —— U.S. ——, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). As stated earlier, ICA § 10701(a) requires carrier rates to be "reasonable." *Reiter* held that although it may technically be true that rate unreasonableness is not a defense, since § 11705(b)(3) provides a cause of action rather than a defense, a shipper could assert that cause of action as a coun-

terclaim to the carrier's undercharge action. *Id.* at ——, 113 S.Ct. at 1214.

■ Indeed, that is precisely what the Defendant has done in the case at bar. Defendant has raised rate unreasonableness both as an affirmative defense and as a counterclaim. This is proper under § 11705(b)(3) because the claim related to the same shipments for which Plaintiff–Trustee seeks to collect the filed rates. *Reiter,* at ——, 113 S.Ct. at 1217.

■ The ICC has no direct power to decree relief. The ICC continues to adhere to the Informal Procedure for Determining Motor Carrier and Freight Forwarder Reparation. 335 I.C.C. 403 (1969). Thus, Shippers must institute a [counter-]claim in the courts, which would then refer the issue of rate reasonableness to the Commission. *Id.* at 414; NITL—Petition to Institute Rulemaking in Negotiated Motor Common Carrier Rates, 2 I.C.C.2d 623, 625 (1989); NITL—Petition to Institute Rulemaking on Negotiated Motor Common Carrier Rates 3 I.C.C.2d 99, 106–07 (1986). *Reiter* held this interpretation of the statute reasonable and, therefore, binding. *Reiter,* at ——, 113 S.Ct. at 1221.

Although the Eleventh Circuit Court of Appeals has not yet ruled on this issue, another bankruptcy court in this District has. In *Brizendine v. Southern Wipers, Inc. (In re Brown Transp. Truckload, Inc.),* 144 B.R. 183 (Bankr.N.D.Ga.1992), Judge Drake agreed with the holding of *Advance–United Expressways, Inc. v. Bard,* 731 F.Supp. 499 (N.D.Ga.1990). *Southern Wipers* concluded that the issue of rate reasonableness is within the primary jurisdiction of the ICC and should be referred to the ICC for resolution. *Id.* at 187 (citing *Bard,* 731 F.Supp. at —— ——).

■ To support this Court staying its proceedings and referring the case to the ICC, the shipper must make a threshold demonstration that the filed rate is unreasonable. *Atlantis Express v. Standard Transp. Serv.,* 955 F.2d 529, 537 (8th Cir. 1992). Referral need not occur "if there is no reasonable likelihood that the ICC will reach a determination favorable to the shipper." *Milne Truck Lines v. Makita U.S.A.,* 970 F.2d at 570 (9th Cir.1992).

Section 10701(e) of the ICA was enacted by Congress to address rate prescriptions for the future. The ICC has developed various factors for determining reasonableness of a filed rate which include relevant rate comparisons, a carrier's proffer of a particular rate, and whether the rate would have moved the tariff had it been assessed at the time the shipments took place. I.C.C., Ex Parte No. MC–177 (Sub–No. 2), *Petitions for Issuance of Rate Reasonableness and Unreasonable Practices Policy Statement,* 8 I.C.C.2d 61, 74–76 (Aug. 15, 1991).

In *Brizendine v. Southern Wipers, Inc. (In re Brown Transp. Truckload, Inc.),* 144 B.R. 183 (Bankr.N.D.Ga.1992), the court acknowledged that affidavit testimony tending to show a significant disparity between the filed rates sought to be charged and the rates charged by competing carriers is sufficient to warrant referral to the ICC. *Id.* at 187–88 (citing *Zurek Exp., Inc. v. Intermetro Indus. Corp.,* 775 F.Supp. 1215 (D.Minn.1991)). By affidavit, and by reference to Exhibit A of Plaintiff–Trustee's Complaint, Defendant has furnished evidence showing that the tariff rates filed at the time of shipment were well above the contract rates negotiated. As testified to in the affidavit of Steve Rodenbaugh, the Vice President–Transportation Services for Limited Distribution Services, Inc. a random sample of the invoices presented reveals that the rate sought now by the Plaintiff–Trustee constitutes an increase ranging from 111–589% from the original freight. Based on this information, and the common practice of the industry's regular shippers to receive substantial discounts from listed class rates, Rodenbaugh concludes in his affidavit that the rates sought by Plaintiff–Trustee to support the undercharge claim are unreasonable.

This Court concludes the evidence introduced conforms to the factors developed by the ICC and formalized in *Zurek.* A threshold showing that the ICC could find

the rates sought to be recovered by Plaintiff–Trustee unreasonable has been met. Thus, the Court will refer the issue of rate reasonableness to the ICC pursuant to the doctrine of primary jurisdiction.

### RATE APPLICABILITY

■ The Defendant has also asked that this Court refer the issue of tariff rate applicability to the ICC for determination. "Issues involving tariff construction and application may be committed to the ICC, particularly if they involve terms of art, cost allocation, or extraordinary constructions of language." *Advanced United Expressways, Inc. v. Eastman Kodak Co.*, 965 F.2d 1347 (5th Cir.1992). *Advanced United*, in referring the issue of rate applicability to the ICC, reasoned that "the issue of reasonableness of the applicable tariff is inextricably linked to a prior determination of which tariff will govern the bills in issue." *Id.* at 1353.

Thus, this Court holds that the issue of rate applicability must also be referred to the ICC. As was true in *Advanced United*, the determination of the reasonableness of the applicable tariff is, indeed, inextricably linked to a prior determination of which rate will govern. This Court recognizes the determination of rate applicability and reasonableness may require the expert skill and knowledge of the ICC as to the interstate transportation industry. Therefore, the Court will grant Defendant's Motion for Referral to the Interstate Commerce Commission and Stay of Issues under the Interstate Commerce Commission's Jurisdiction.

An appropriate Order is entered contemporaneously herewith.

**IT IS SO ORDERED.**